UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


IN RE: JOHN RICHARDS HOMES      CIVIL ACTION NO. 06-14356
BUILDING COMPANY, L.L.C.

                                       DISTRICT JUDGE STEPHEN J. MURPHY, III
JOHN RICHARDS HOMES
BUILDING COMPANY, L.L.C.          MAGISTRATE JUDGE VIRGINIA M. MORGAN

      Appellant,

      v.

KEVIN ADELL,

      Appellee.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

      This matter comes before the court on an appeal by John Richards Homes Building Co.,

L.L.C. ("JRH") from a September 21, 2006 order of the United States Bankruptcy Court for the

Eastern District of Michigan (the "Bankruptcy Court") denying JRH's request for additional

punitive damages based on Kevin Adell's post-award conduct.  For the reasons stated below, this

court recommends that the decision of the Bankruptcy Court be **AFFIRMED**.  The Bankruptcy

Court declined to sanction Adell as a matter of discretion and the Bankruptcy Court did not

abuse that discretion.  Indeed, JRH does not argue that the Bankruptcy's Court's decision was an

abuse of discretion.  Instead, JRH misconstrues the Bankruptcy Court's decision by asserting

that the Bankruptcy Court found that it lacked the authority to sanction Adell for any post-award

conduct and that this was error. However, the Bankruptcy Court did not so find and it instead

determined that sanctions were warranted in this case. Consequently, JRH's appeal should be

rejected.

If the District Court accepts JRH's interpretation of the Bankruptcy Court's decision, the

District Court should still affirm the Bankruptcy Court's decision with respect to Adell's appeals

of the initial award, but reverse and remand the Bankruptcy Court's decision with respect to

Adell's actions in other courts. In the better view, while the Bankruptcy Court lacked the

authority to sanction Adell for appealing the initial award, it could sanction Adell for his actions

in other courts pursuant to its inherent powers or 11 U.S.C. § 105.[1]

## II.  Background

The appeal by JRH presents questions relating to statutory interpretation and the inherent

power of courts.

### A.  Underlying Case

As described by the Sixth Circuit, the underlying case in this matter involved a dispute

between JRH and Kevin Adell:

> As the bankruptcy court found, in December 2001, Adell and JRH
> entered into a Residential Building and Purchase Agreement
> whereby JRH, in exchange for $3,030,000, agreed to sell Adell a
> 1.8 acre parcel of property in Bloomfield Hills, Michigan, and to
> construct a home for Adell on the property, with construction to
> begin "within a reasonable time after the completion of building

---

[1]This Court would note that it finds Kevin Adell's conduct following the initial award to
be egregious and potentially sanctionable. However, the decision to deny sanctions is a matter
of discretion and the soundness of the Bankruptcy Court's exercise of discretion will not be
second-guessed here.

plans and issuance of permits."  On February 28, 2002, the deal closed. The closing documents allocated $1,750,000 out of the $3,030,000 for the land purchase.

Over the next few months, Adell's relationship with JRH and its principal, John Shekerjian, soured.  Adell began to complain about the pace of construction on his home and to contact JRH's former employees seeking negative information about JRH.  He told Shekerjian that he wanted another builder to build his house and, apparently, barred JRH from the property.  He also became upset about the amount he had paid for the land, contending that it was only worth $1 million instead of $1.75 million.

On June 6, 2002, after a number of conversations, meetings, letters and other interactions between Adell or his representatives and JRH or its representatives, Adell filed a civil suit against JRH and Shekerjian in the Oakland County Circuit Court.  The complaint included a number of claims, all of which essentially rested on two allegations: (1) that Shekerjian and JRH had orally told Adell that the land was worth $1,000,000, and that the home they would construct for him would have a value of $2,000,000, despite the fact that the executed sale documents allocated $1,750,000 to the value of the land, leaving at most $1,280,000 for the home construction; and (2) that Shekerjian for JRH had told Adell that construction would begin immediately after the sale closed, even though they knew that was impossible because there were "water problems" with the property, and that the resulting delay in commencing construction was not "reasonable."  On June 18, 2002, JRH and Shekerjian jointly filed an answer, denying the substance of all of Adell's claims, stating affirmative defenses, and including a verified counter-complaint.

During the time between when Adell filed his state court civil suit and JRH and Shekerjian filed their responsive pleadings, Adell contacted at least two of JRH's contractors, telling them that JRH was in financial trouble and trying to persuade them to join him in filing an involuntary bankruptcy petition against JRH.  Both refused.

On June 24, 2002, less than a week after JRH and Shekerjian filed their responses in the state court case and without any further discussion or communication, Adell, as the sole petitioning

creditor, filed an involuntary bankruptcy petition against JRH pursuant to 11 U.S.C. § 303(b)(2). According to the petition, Adell's own claim against JRH for fraud and breach of contract was in the amount of $800,000. Adell sought to maximize the publicity attending his filing by hiring a public relations firm, Marx Layne, to publicize alleged defects in JRH's performance of its construction and financial obligations.

On July 1, 2002, JRH filed a motion to dismiss the petition. Noting that Adell's claim against JRH cited in the petition was also the basis for Adell's state court civil complaint against JRH and Shekerjian, and that JRH and Shekerjian had recently filed pleadings denying all of Adell's claims, JRH argued that Adell's claim was the subject of a "bona fide dispute," precluding its use as the basis for the petition. JRH also argued that Adell was required to have at least three petitioning creditors because JRH was an entity with 12 or more creditors. Should the petition be dismissed, JRH asked the bankruptcy court to award it fees, costs and damages pursuant to 11 U.S.C. § 303(I). On July 12, 2002, Adell's bankruptcy attorneys filed a notice that three additional creditors had joined in the filing of the petition.

On July 15, 2002, the bankruptcy court held a hearing on JRH's motion to dismiss. Ruling from the bench, the court granted the motion, concluding that Adell was not qualified to serve as a creditor in an involuntary bankruptcy because his claim against JRH was not undisputed. The court explained:

The record that is before the Court overwhelmingly establishes that there is a bona fide dispute concerning this petitioning creditor's claim against the Alleged Debtor ... [and]

... that there are significant genuine issues of material fact concerning any disposition of the issues raised in the [state court case], ... such fundamental issues as which of the parties breached the contract, which of the parties was the first to breach the contract. There are clear issues of fact concerning particularly the fraud claim and the statutory claim.

Having rejected the sole petitioning creditor, Adell, the bankruptcy court ruled that it could not permit the joinder of other putative

creditors.  Adell did not appeal the bankruptcy court's dismissal of the petition.

After a period of discovery, followed by a two-day evidentiary hearing, the bankruptcy court granted JRH's motion on April 25, 2003.  In a thorough opinion, the court found that Adell filed the involuntary bankruptcy petition against JRH in bad faith and awarded JRH compensatory damages in the amount of $4,100,000, punitive damages in the amount of $2,000,000, and attorneys' fees and costs in the amount of $313,230.68. [In re John Richards Homes Bldg. Co., L.L.C., 439 F.3d 248, 252-254 (6th Cir. 2006) (internal citations omitted).]

### B.  Post-Judgment Events

On May 2, 2003, Adell appealed the Bankruptcy Court's decision.  See In re John Richards Homes Building Co., L.L.C.,  312 B.R. 849, 854 (E.D.Mich. 2004).

On May 6, 2003, while the appeal was pending, Adell entered into a purchase agreement for a $2.8 million home in Florida.  See In re John Richards Homes Bldg. Co., L.L.C., 298 B.R. 591, 593 (Bankr. E.D. Mich. 2003).  On May 8, 2003, he closed on the purchase of the Florida home.  In re John Richards Homes, 298 B.R. at 593.

On May 12, 2003, JRH directed writs of garnishment towards Adell's employers, Adell Broadcasting and STN.com, and 24 additional persons or entities.  (Bankr. E.D. Mich. Petition No. 02-54689; D/E #217 through D/E #242)  Adell Broadcasting and STN.com subsequently filed garnishee disclosures on May 23, 2006.  (Bankr. E.D. Mich. Petition No. 02-54689; D/E #300 and #302)

On May 21, 2003, JRH filed a motion in the Bankruptcy Court for miscellaneous post-judgment relief, seeking the aid of the Bankruptcy Court to collect on its judgment.  (Bankr. E.D. Mich. Petition No. 02-54689; D/E #281)  Specifically, JRH argued that because Adell had

used the proceeds from his Michigan assets to purchase the Florida home immediately after the judgment was entered, Adell should be ordered to sell that home and remit the proceeds in partial satisfaction of the judgment. See In re John Richards Homes, 298 B.R. at 593.[2]

On September 17, 2003, the Bankruptcy Court granted JRH's motion in part after finding that Florida's homestead exemption, as construed by Florida Supreme Court, was preempted by federal law and did not provide any protection for a party who had filed an involuntary bankruptcy petition in bad faith and who was attempting to protect his assets from the substantial compensatory and punitive damages awards entered against him by the Bankruptcy Court. In re John Richards Homes, 298 B.R. at 605-606. In the alternative, the Bankruptcy Court found that, even if the Florida homestead exemption was not preempted, Adell did not qualify for it because the Florida house was not his homestead. In re John Richards Homes, 298 B.R. at 607-608. The Bankruptcy Court ordered Adell to sell the Florida property within sixty (60) days and turn the proceeds from that sale over to JRH. In re John Richards Homes, 298 B.R. at 606. The Bankruptcy Court also ordered that Adell turn over certain assets to the U.S. Marshals and that

---

[2]While the Bankruptcy Court held a hearing on JRH's motion (Bankr. E.D. Mich. Petition No. 02-54689; D/E #317), it denied Adell's request for an Evidentiary Hearing on the issue of whether he was domiciled in Michigan or Florida. On July 30, 2003, Adell appealed the Bankruptcy Court's denial of Adell's request for an Evidentiary Hearing on the issue of whether Adell was domiciled in Michigan or Florida. (Case No. 03-40194, D/E #1). On February 18, 2004, the District Court closed that appeal for administrative purposes because Adell had filed for bankruptcy. (Case No. 03-40194, D/E #14)

the Michigan Secretary of State record a lien in favor of JRH on any vehicles still titled in

Adell's name.  In re John Richards Homes, 298 B.R. at 609.[3]

On September 30, 2003, JRH filed motions for judgment against Adell Broadcasting

Corp. and STN.com pursuant to MCL § 600.4051 on the basis that the garnishee disclosures

filed by those two companies were false.  (Bankr. E.D. Mich. Petition No. 02-54689; D/E #480

and #483)

On November 14, 2003, Adell sought relief under Chapter 11 of the Bankruptcy Code in

the United States Bankruptcy Court for the Middle District of Florida (the "Florida Bankruptcy

Court"), immediately triggering the operation of the automatic stay imposed by Section 362 of

the Bankruptcy Code and stopping any further collection attempts by JRH.  See In re Adell, 321

B.R. 573, 577 (Bankr. M.D. Fla. 2005).

In response, JRH first moved to transfer Adell's Chapter 11 case from the Florida

Bankruptcy Court to the Bankruptcy Court in Michigan.  See In re Adell, 371 B.R. 541, 543

(Bankr. M.D. Fla. 2007)  That motion was denied.  In re Adell, 371 B.R. at 543.  Having failed

to obtain a transfer to the Michigan Bankruptcy Court, JRH tried, unsuccessfully to transfer the

case to a different judge in the Middle District of Florida.  In re Adell, 371 B.R. at 543.

On February 10, 2004, JRH filed a motion to dismiss Adell's Chapter 11 filing on the

basis that it was filed in bad faith.  On May 28, 2004, the Florida Bankruptcy Court, after

---

[3]On September, 26, 2003, Adell appealed the Bankruptcy Court's ruling that the Florida home did not fall within the Florida homestead exemption.  (E. D. Mich. Case No. 03-40245, D/E #1)  On February 18, 2004, the District Court closed that appeal for administrative purposes because Adell had filed for bankruptcy.  (Case No. 03-40245, D/E #12)

extensive hearings, entered an order and opinion denying JRH's motion to dismiss.  See In re

Adell, 310 B.R. 460, 461 (Bankr. M.D. Fla. 2004).

On February 25, 2004, Adell filed a Chapter 11 plan of reorganization which proposed to

pay the judgment in full over time once the judgment became final and no longer appealable.

JRH objected to that plan.  In re Adell, 371 B.R. at 543.  Subsequently, Adell amended the

proposed plan to accelerate payment of the judgment, pay interest on the judgment, and to secure

the judgment to the extent of at least $3.0 million with a cash escrow.  JRH continued to object.

In re Adell, 371 B.R. at 543.

On August 5, 2004, the United States District Court for the Eastern District of Michigan

affirmed the Bankruptcy Court's award of JRH's costs, attorneys' fees, compensatory damages

and punitive damages pursuant to 11 U.S.C. § 303(i).  In re John Richards Homes Building Co.,

L.L.C.  312 B.R. 849, 867 (E.D. Mich. 2004).  Subsequently, on September 1, 2004, Adell

appealed the District Court's affirmation of the Bankruptcy Court's award.  (Case No. 03-40109,

D/E #20)

On October 15, 2004, the Florida Bankruptcy Court denied JRH's motion for relief from

the automatic stay as to the garnishment actions against STN.com and Adell Broadcasting Corp.

In re Adell, No. 03-23684, 2004 WL 2931390 (Bankr. M.D. Fla. October 15, 2004).

On October 27, 2004, the Florida Bankruptcy Court entered an Order denying Adell's

Fourth Amended Chapter 11 Plan and set a hearing for November 18, 2004, to consider a

dismissal of the bankruptcy case.  In re Adell, 371 B.R. at 544.  That Order was challenged by

Adell, who filed a Motion for Reconsideration on November 5, 2004.  In re Adell, 371 B.R. at

544.  On March 22, 2005, the Florida Bankruptcy Court granted Adell's request for reconsideration.  In re Adell, 371 B.R. at 544.

In response to the Reconsideration Order, Adell proposed a plan to place seven million dollars ($7,000,000) in escrow to be used to satisfy the judgment if it was affirmed on appeal.  That plan was to be funded by Adell's employers and by a mortgage on Adell's homestead.  In re Adell, 371 B.R. at 544.

On February 1, 2005, the Florida Bankruptcy Court granted Adell's request to avoid, on exemption impairment grounds, the lien on the Florida residence.  In re Adell, 321 B.R. 573, 578 (Bankr. M.D. Fla. 2005).  As found by the Florida Bankruptcy Court:

> The difference between the existing facts and the facts at the time the Michigan Bankruptcy Court rejected the claim should be quite evident. The Debtor's homestead exemption claim presented to this Court is in the context of an already pending bankruptcy case of the Debtor. Based on the evidence presented to this Court, this Court is satisfied that the Debtor complied with the residency requirements of Section 522(b)(2)(A), that he was a bona fide resident of Florida at the time he filed his Petition for relief under Chapter 11 in this Court, therefore, he is entitled to the homestead protection guaranteed by Article X, Section 4 of the Florida Constitution.  Thus, the Naples residence of the Debtor is exempt and JRH cannot compel the same to be sold to satisfy the Judgment of the Michigan Bankruptcy Court based on the sanction award granted to JRH.  [In re Adell, 321 B.R. at 578.]

On May 11, 2005, the Florida  District Court, considering JRH's appeal of the Florida Bankruptcy Court's denial of JRH's initial motion to dismiss the Chapter 11, reversed the Florida Bankruptcy Court's ruling and held that the denial was in error and the Chapter 11 case should be dismissed because it was filed in bad faith.  In re Adell, 371 B.R. at 544.

However, on May 12, 2005, before a written order dismissing the case could be entered, Adell filed a notice that he was voluntarily converting his bankruptcy to a case under Chapter 7. In re Adell, 371 B.R. at 544. On May 17, 2005, the Florida Bankruptcy Court entered an order converting Adell's Chapter 11 Case to a case under Chapter 7. In re Adell, 371 B.R. at 544.[4]

On July 13, 2005, the Florida Bankruptcy Court denied JRH's second motion requesting relief from the automatic stay in order to pursue garnishment proceedings after determining that a finding of bad faith in filing a Chapter 11 petition has no relevance to Adell's right to maintain a Chapter 7 case and, thus, did not serve as a "cause" for granting relief from the stay. See In re Adell, 328 B.R. 850, 852-853 (Bankr. M.D. Fla. 2005).

On July 22, 2005, JRH filed a second motion to dismiss (Doc. No. 677) and, on October 4, 2005, the Florida Bankruptcy Court entered an order granting JRH's motion to dismiss Adell's Chapter 7 Case after finding that cause existed for dismissal because Adell's filing was not supported by the well-established policy aims of Chapter 7. See In re Adell, 332 B.R. 844, 848-849 (Bankr. M.D. Fla. 2005).

---

[4]On June 21, 2005, the Florida Bankruptcy Court sanctioned JRH's counsel for actions taken by JRH's counsel on May 11, 2005 in the Michigan Bankruptcy Court. In re Adell, 328 B.R. 845, 849 (Bankr. M.D. Fla. 2005). On May 11, 2005, after the Florida District Court entered an order granting JRH's motion to dismiss, JRH's counsel sought immediate appointment of a receiver for Adell's property from the Michigan Bankruptcy Court. According to the Florida Bankruptcy Court, the mere entry of an order granting the motion to dismiss did not dismiss the case and, therefore, Adell's case was still before the Florida Bankruptcy Court until the Florida District Court revoked the reference. Accordingly, in the Florida Bankruptcy Court's view, the automatic stay never ceased to exist and it still protected Adell regardless of any findings of the Michigan Bankruptcy Court. In re Adell, 328 B.R. at 848.

On February 14, 2006, the Florida Bankruptcy Court entered an order reaffirming the order on the motion to dismiss and denying Adell's Emergency Motion for Reconsideration and Motion for Stay Pending Reconsideration or Appeal. See In re Adell, 343 B.R. 717, 722 (Bankr. M.D. Fla. 2006) ("this Court is satisfied that there is nothing stated in [Adell's] Emergency Motion for Reconsideration which would warrant this Court to set aside its Order on Motion to Dismiss.").

On March 1, 2006, the Sixth Circuit affirmed both the Bankruptcy Court's award and the District Court's approval of that reward. See In re John Richards Homes Bldg. Co., L.L.C., 439 F.3d 248, 252 (6th Cir. 2006)

On April 3, 2006, Adell paid the judgment in full with interest. Included in the payment were the punitive damages, costs and attorneys' fees that the Bankruptcy Court awarded JRH in defending the involuntary case and obtaining the Judgment. See In re Adell, 371 B.R. 541, 544 (Bankr. M.D. Fla. 2007).[5]

Prior to payment of the judgment, on February 16, 2006, JRH had filed a "Motion to Enforce Judgment" in which it reasserted early motions for judgment against Adell Broadcasting Corp. and STN.com (Bankr. E.D. Mich. Petition No. 02-54689; D/E #773). On August 8, 2006, the Bankruptcy Court denied JRH's motions for judgment against Adell Broadcasting Corp. and

---

[5]While Adell paid the judgment on April 3, 2006, he still filed a Petition for a Writ of Certiorari on May 30, 2006. Petition for Writ of Certiorari, Adell v. John Richards Homes Bldg. Co., No. 05-1532, 2006 WL 1519179, (May 30, 2006). On October 2, 2006, the United States Supreme Court denied Adell's petition for writ of certiorari. Adell v. John Richards Homes Bldg. Co., L.L.C., 127 S.Ct. 85 (Mem), No. 01-1532 (2006).

STN.com.  See In re Johns Richards Homes Company, L.L.C., 346 B.R. 762 (Bankr. E.D. Mich. 2006).  According to the Bankruptcy Court, the Michigan Court Rules undermined JRH's argument that MCL § 600.4051 imposed full liability for the judgment on the garnishee defendant separate from the defendant's liability.  The court found that the statute, by the better reading, means that a garnishee defendant who files a false disclosure is liable only for the remaining balance due on the underlying judgment.  In re John Richards Homes, 346 B.R. at 766.  In this case, because Adell had paid the judgment and there was no remaining balance, the Bankruptcy Court found that the garnishees, Adell Broadcasting and STN.com, had no further liability to JRH.  In re John Richards Homes, 346 B.R. at 766.

After payment of the judgment, JRH filed a motion for sanctions in the Florida Bankruptcy Court.  On April 7, 2006, the Florida Bankruptcy Court entered an order denying JRH's motion to impose sanctions on the basis that Adell's petition had been dismissed and, therefore, it did not retain jurisdiction in order to issue any further orders relating to the above-captioned case.  See In re Adell, No. 2:06-cv-276-FtM-29SPC, 2006 WL 3827438, *1 (M.D. Fla. December 27, 2006).  On April 21, 2006, the Florida Bankruptcy Court denied reconsideration of that motion as without merit, and on April 30, 2006, JRH filed a notice of appeal.  In re Adell, 2006 WL 3827438 at *1.  On December 27, 2006, the United States District Court for the Middle District of Florida issued an opinion and order granting JRH's motion to remand.  In re Adell, 2006 WL 3827438 at *1.  According to the Florida District Court, the case was remanded to the Florida Bankruptcy Court to revisit JRH's motion for sanctions on the merits, or to indicate that its prior order was based on the merits as well as lack of jurisdiction.

In re Adell, 2006 WL 3827438 at *1.  On March 28, 2007, the Florida Bankruptcy Court denied JRH's motion for sanctions after determining that Adell had attempted to pursue a legitimate goal within the utmost of his ability when filing for bankruptcy and that, therefore, imposing a sanction would be a double punishment in addition to the $2 million judgment imposed by the Michigan Bankruptcy Court.  See In re Adell, 371 B.R. 541, 545-546 (Bankr. M.D. Fla. 2007). On March 18, 2008, the Florida District Court affirmed the Florida Bankruptcy Court's decision to deny sanctions.  See In re Adell, No. 2:07-cv-361-FTM-29SPC, 2008 WL 746833 (M.D. Fla. March 18, 2008).  On October 17, 2007, the Eleventh Circuit issued an opinion affirming the Florida District Court's opinion.  See In re Adell, No. 08-12220, 2008 WL 4605956 (11th Cir. October 17, 2008).

On April 21, 2006, Honigman Miller Schwartz and Cohn ("HMSC"), JRH's attorney's law firm, filed a "Second Application for Compensation of Attorney Fees and Expenses" in the Bankruptcy Court.  (Bankr. E.D. Mich. Petition No. 02-54689; D/E #834).  In that application, HMSC sought, pursuant to 11 U.S.C. § 303(i), $1,712,974.04 as compensation for fees and expenses incurred in enforcing the judgment and defending the appeals.  Adell filed an objection to that application (Bankr. E.D. Mich. Petition No. 02-54689; D/E #880) and the Bankruptcy Court conducted a hearing regarding that motion on July 10, 2006.  On September 21, 2006, the Bankruptcy Court denied HSMC's second application.  See In re John Richards Homes, Co. L.L.C., No. 02-54689-R, 2006 WL 3228523 (Bankr. E.D. Mich. September 21, 2006).  In denying that application, the Bankruptcy Court noted that (1) HMSC not only sought attorney fees and costs for the appeals, but for all fees and costs incurred trying to collect the judgment,

-13-

and that (2) few cases have addressed the precise issue of whether § 303(i)(1) authorizes the

bankruptcy court to award fees and costs beyond those directly incurred in defending the

involuntary petition.  In conclusion the Bankruptcy Court stated:

> [HMSC] not only seeks attorney fees and costs for the appeals, but
> for all fees and costs incurred trying to collect the judgment. HMS
> & C has offered no legal support for this request. In light of the
> caselaw to the contrary, the Court must deny its application for a
> second award of attorney fees and costs. [In re John Richards
> Homes, 2006 WL 3228523 at *2.]

### C.  Matter Before the Court

On April 13, 2006, JRH filed a "Motion for Assessment of Additional Punitive

Damages" in the Bankruptcy Court.  (Bankr. E.D. Mich. Petition No. 02-54689; D/E #834)

Adell filed an objection to the motion (Bankr. E.D. Mich. Petition No. 02-54689; D/E #879) and

the Bankruptcy Court conducted a hearing regarding that motion on July 10, 2006.  On

September 21, 2006, the Bankruptcy Court denied JRH's motion for assessment of additional

punitive damages.  See In re John Richards Homes Co., L.L.C., No. 02-54689-R, 2006 WL

3230009 (Bankr. E.D. Mich. September 21, 2006).  In denying that motion, the Bankruptcy

Court stated:

> The Court declines to sanction Adell, either pursuant to any
> inherent power it may have or pursuant to § 105. Contrary to JRH's
> assertion, the Court did not order Adell to pay JRH $6.413 million.
> The Court entered a judgment for that amount. A money judgment
> is not a court order. To the extent that Adell's conduct in the
> various courts warrants sanctions, JRH is free to seek redress in
> those courts. [In re John Richards Homes, 2006 WL 3230009 at
> *2.]

On October 3, 2006, JRH filed a notice of appeal with respect to the Bankruptcy Court's denial of JRH's motion for additional punitive damages (D/E #1). In its appeal brief, JRH argues that the Bankruptcy Court erred when it determined that it did not have the authority to sanction Adell for conduct outside of the Eastern District of Michigan and when it concluded that it could not impose sanctions for violation of a judgment (D/E #3). Adell argues (D/E #10) that the Bankruptcy Court lacked jurisdiction over JRH's motion because the bankruptcy case has been closed and because JRH has not sought relief from the judgment, which has been paid. Adell also argues that the Bankruptcy Court did not abuse its discretion by declining to sanction Adell.

In its reply brief (D/E #13), JRH asserts that Adell's arguments regarding jurisdiction are meritless and should be rejected. JRH also argues that the Bankruptcy Court found that it lacked the authority to sanction Adell instead of declining to sanction Adell as a matter of discretion. JRH further argues that the Bankruptcy Court had authority, pursuant to both its inherent powers as a court and 11 U.S.C. § 105, to sanction Adell's post-award conduct.

## III. Standard of Review

District courts have jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges. See 28 U.S.C. § 158(a)(1). The District Court reviews a bankruptcy court's conclusions of law de novo and its findings of fact for clear error. See In re Holland, 151 F.3d 547, 548 (6th Cir. 1998); Bankruptcy Rule 8013 ("[the bankruptcy court's] [f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous"). The decision whether to impose sanctions, pursuant to statute or the inherent power

vested in federal courts, is reviewed for an abuse of discretion.  Chambers v. NASCO, Inc., 501

U.S. 32, 55 (1991); First Bank of Marrietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 516

(6th Cir. 2002) (noting that inherent powers must be exercised with restraint and applying abuse

of discretion standard).

## IV.  Discussion

### A.  Jurisdiction - The Bankruptcy Court retained jurisdiction over the issue of punitive sanctions.

As a preliminary matter, Adell argues that the Bankruptcy Court did not have jurisdiction

to rule on JRH's motion for additional punitive damages because the bankruptcy case has been

dismissed.  While Adell raised this argument below, the Bankruptcy Court did not address it.

Nevertheless, while the Bankruptcy Court did not deny JRH's motion because of a lack of

jurisdiction, the District Court may consider whether the Bankruptcy Court was without

jurisdiction to consider the motion in the first instance as an alternative ground for affirming the

decision below.  See; Dimmitt & Owens Fin., Inc. v. Herdean (In re Herdean), 92 Fed. Appx.

107, 110 (6th Cir. 2003) (affirming bankruptcy court decision on alternative basis, despite error

in reason given for decision below).  Moreover, "federal courts, being of limited jurisdiction,

must examine their subject-matter jurisdiction 'throughout the pendency of *every* matter before

them.'"  See Holloway v. Brush, 220 F.3d 767, 781 (6th Cir. 2000) quoting Children's

Healthcare is a Legal Duty, Inc. v. Deters, 92 F.3d 1412, 1419 n. 2 (6th Cir.1996) (emphasis in

original).  As the Sixth Circuit has observed, a court has a duty to inquire into the basis for

subject matter jurisdiction and to dismiss the case if jurisdiction is lacking.  See Campanella v.

Commerce Exch. Bank, 137 F.3d 885, 890 (6th Cir. 1998).  The United States Supreme Court

has expressly instructed that "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Therefore, in light of that case law and Adell's arguments relating to jurisdiction, the Court should consider the issue of subject matter jurisdiction as it relates to the matter at hand.

Reviewing the scope of bankruptcy court jurisdiction begins with the Congressional grant of jurisdiction in 28 U.S.C. §§ 1334 and 157. Section 1334 confers jurisdiction on the district court to hear "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). § 157 provides for the referral of those matters to the bankruptcy courts and sets up the framework of core and non-core, related proceedings.

Core proceedings consist of "any or all proceedings arising under title 11 or arising in a case under title 11." 28 U.S.C. § 157(b). Interpreting § 157(b)(2), the Sixth Circuit has held that "[a] core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." In re Lowenbraun, 453 F.3d 314, 320 (6th Cir. 2006) quoting Sanders Confectionary Prods., Inc. v. Heller Financial, Inc., 973 F.2d 474, 482 (6th Cir.1992) (holding that an action was a core proceeding where "a successful action on the [ ] plaintiffs' part could have affected the outcome of the bankruptcy proceeding"); see also In re DeLorean Motor Co., 155 B.R. 521, 525 (B.A.P. 9th Cir.1993) (holding that even if a claim fits within the literal language of § 157(b)(2), it will not be considered a core proceeding "if it is a state law claim that could exist outside of bankruptcy and is not inextricably bound to ... a right

-17-

created by the Bankruptcy Code.")  A nonexhaustive list of core proceedings is found in 28 U.S.C. § 157(b)(2).

Non-core, related proceedings are civil proceedings which do not invoke a substantive right created by bankruptcy but nonetheless fall within the jurisdiction of the bankruptcy court because they share a nexus with the bankruptcy case and will have some "conceivable effect" on the administration of the debtor's estate.  See In re Williams, 256 B.R. 885, 893 (B.A.P. 8th Cir. 2001).

Here, the underlying bankruptcy case had been dismissed.  The question becomes what jurisdiction the Bankruptcy Court retains.  In In re Lowenbraun, 453 F.3d 314, 321 (6th Cir. 2006), the Sixth Circuit cited with approval the case In re Douglas L. Heinsohn, 247 B.R. 237, 242-44 (E.D. Tenn. 2000), in which the District Court stated that "[t]here is no bright-line rule dictating that once an estate has been fully administered a trustee cannot avail himself of the federal court's bankruptcy jurisdiction") (citation and quotation marks omitted).  Title 28 U.S.C. § 1334(b) and  28 U.S.C. § 157(b) specifically provide that bankruptcy court jurisdiction is not limited to matters concerning the administration of the estate and courts have found that a bankruptcy court may have the discretion to determine whether it is proper to exercise jurisdiction after the underlying case has been dismissed or closed.  See Carraher v. Morgan Electronics, Inc. ( In re Carraher ), 971 F.2d 327 (9th Cir. 1992) (holding that bankruptcy court has discretion to retain jurisdiction over related case after dismissal of the underlying bankruptcy case); In re Morris, 950 F.2d 1531, 1534 (11th Cir. 1992).  See also In re Javens, 107 F.3d 359, 364 n. 2 (6th Cir. 1997) (finding that dismissal of an underlying bankruptcy case does not

automatically strip a federal court of jurisdiction to dispose of related matters after the underlying bankruptcy case has been dismissed, although the exercise of such jurisdiction is left to the sound discretion of the court).

As a general rule, the dismissal of a bankruptcy case results in the dismissal of non-core, related proceedings, because the bankruptcy court's jurisdiction over the related proceeding depends on its nexus with the underlying bankruptcy case.  In re Williams, 256 B.R. at 893; Tim Wargo & Sons, Inc. v. Mankin Farms, Inc. ( In re Tim Wargo & Sons, Inc.), 107 B.R. 626 (Bankr. E.D. Ark.1989) citing In re Smith, 866 F.2d 576, 580 (3rd Cir. 1989).

On the other hand, there is much support for the proposition that bankruptcy courts retain jurisdiction over core proceedings beyond the dismissal or closure of the underlying bankruptcy case.  See In re Williams, 256 B.R. at 893; Post v. Ewing ( In re Post ), 119 B.R. 566, 567 (S.D. Ohio 1989); Davis v. Courington ( In re Davis ), 177 B.R. 907, 911 (B.A.P. 9th Cir. 1995); In re Hardy, 209 B.R. 371, 373 (Bankr. E.D.Va. 1997).  As noted by the Eighth Circuit, core proceedings that "arise after the case is dismissed or closed, however, do not fit neatly into the categories listed in 28 U.S.C. § 157(b)(2), inasmuch as most or all of those categories are premised on the existence of an underlying bankruptcy estate."  In re Williams, 256 B.R. at 893. Examples of core proceedings that arise after a bankruptcy case is dismissed or closed include awards of costs, attorney's fees, damages, punitive damages and sanctions.  See In re Cooper School of Art, Inc., 709 F.2d 1104, 1106 (6th Cir. 1983) (holding that when "a bankruptcy court dismisses a petition for involuntary proceedings under Chapter XI for failure to join three or more creditors it does not lose jurisdiction for the purpose of awarding costs and attorney fees");

In re R. Eric Peterson Constr. Co., Inc., 951 F.2d 1175, 1179 (10th Cir. 1991) (finding that dismissal of the bankruptcy petition is one prerequisite that must be met before the bankruptcy court can make a § 303(i) award); Price v. Rochford, 947 F.2d 829, 830-31 (7th Cir. 1991) (holding that an action under § 362(h) for damages for willful violation of an automatic stay survives dismissal of the case in bankruptcy); In re Singer Furniture Acquisition Corp., 261 B.R. 745, 750-751 (Bankr. M.D. Fla. 2001) (awarding sanctions pursuant to the inherent power of the court and 11 U.S.C. § 105 for the filing of a Chapter 11 Petition in bad faith); In re Glannon, 245 B.R. 882, 887 (D. Kan. 2000) (holding that § 303(i) proceedings are core proceedings that the bankruptcy court retained jurisdiction over following the dismissal of the bankruptcy petition).

In addition, it is also well established that bankruptcy courts retain jurisdiction after a case has been dismissed or closed to interpret or enforce previously entered orders. See In re Williams, 256 B.R. at 893; In re Menk, 241 B.R. 896, 896 (B.A.P. 9th Cir. 1999); Beneficial Trust Deeds v. Franklin ( In re Franklin ), 802 F.2d 324, 326 (9th Cir. 1986); Koehler v. Grant, 213 B.R. 567, 569 (B.A.P. 8th Cir. 1997). Similarly, the enforcement of orders resulting from core proceedings are themselves considered core proceedings. See Mountain America Credit Union v. Skinner ( In re Skinner ), 917 F.2d 444, 447 (10th Cir. 1990) ("Civil contempt proceedings arising out of core matters are themselves core matters."); In re Franklin, 802 F.2d at 326 ("Requests for bankruptcy courts to construe their own orders must be considered to arise under title 11 if the policies underlying the Code are to be effectively implemented."); In re Texaco Inc., 182 B.R. at 944 ("There can be no question that a proceeding ... to enforce and

construe a confirmation order issued by this Court in this case, constitutes a proceeding 'arising in or related to a case under title 11.' ... [T]his is a core proceeding under section 157(b)(2).").

In this case, JRH's motion for additional punitive damages was a core proceeding over which the Bankruptcy Court retained jurisdiction after the dismissal of the involuntary petition and the payment of the judgment. In making the determination of whether a proceeding is a core proceeding, the court looks at the form and the substance of the proceeding. Sanders Confectionery Prods., Inc., v. Heller Fin., Inc., 973 F.2d 474, 483 (6th Cir. 1992) citing In re Wolverine Radio Co., 930 F.2d 1132, 1144 (6th Cir. 1991). Here, JRH's motion arises from the judgment issued by the Bankruptcy Court, which was clearly a core proceeding, and it is inextricably intertwined with the bankruptcy case itself. As discussed above, courts have found that awards of punitive damages pursuant to 11 U.S.C. § 303(i) and sanctions pursuant to the inherent power of the court are core proceedings that the bankruptcy court retains jurisdiction of following the dismissal of the bankruptcy case. JRH seeks punitive sanctions[6] in this case pursuant to the inherent power of the court or 11 U.S.C. § 105(a). For the reasons stated above,

---

[6]This Court would note that JRH appears to use "punitive damages" and "sanctions" interchangeably. This Court does not view those concepts as being equivalent; sanctions include both coercive and punitive sanctions, International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 828-830, 114 S.Ct. 2552 (1994); Jove Engineering, Inc. v. I.R.S., 92 F.3d 1539, 1557-1559 (11th Cir. 1996), and a court must look at the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases when determining whether a punitive damages awards satisfies due process, Chicago Title Ins. Corp. v. Magnuson, 487 F.3d 985, 998-999 (6th Cir. 2007). In this case, neither party discusses at length the nature of the relief sought in JRH's motion, but it seems clear that JRH seeks punitive sanctions pursuant to the inherent power of the court and 11 U.S.C. § 105. Therefore, as the Bankruptcy Court did in its opinion, this Court will identify the relief sought as sanctions in this report and recommendation.

this Court finds that JRH's motion constituted a core proceeding over which the Bankruptcy Court had jurisdiction.

Neither is, as Adell argues, JRH's motion barred because the judgment has been paid and JRH failed to seek relief from the judgment. According to Adell, JRH's claim merged with the judgment and, therefore, it must seek relief from the judgment before requesting additional damages. The court disagrees. As noted by JRH in its reply brief, JRH seeks punitive damages or sanctions for Adell's conduct following the initial award. This is relief separate from and subsequent to the judgment. Therefore, its motion is not barred by the merger doctrine.

## B. Merits of Appeal

As discussed above, JRH moved for punitive sanctions pursuant to the inherent power of the Bankruptcy Court or 11 U.S.C § 105 of the Bankruptcy Code. In response to that motion, the Bankruptcy Code held:

> The Court declines to sanction Adell, either pursuant to any inherent power it may have or pursuant to § 105. Contrary to JRH's assertion, the Court did not order Adell to pay JRH $6.413 million. The Court entered a judgment for that amount. A money judgment is not a court order. To the extent that Adell's conduct in the various courts warrants sanctions, JRH is free to seek redress in those courts. [In re John Richards Homes, 2006 WL 3230009 at *2.]

### 1. Bankruptcy Court's Decision

JRH argues on appeal that the Bankruptcy Court erred by finding that it did not have the authority to sanction Adell for his post-award conduct. JRH's arguments, seem to misconstrue the Bankruptcy Court's decision. The Bankruptcy Court did not find that it lacked the authority to sanction Adell. Instead, the Bankruptcy Court decided as a matter of its discretion not to

sanction Adell.  <u>See</u> <u>In re John Richards Homes</u>, 2006 WL 3230009 at *2.  The Bankruptcy

Court found that Adell did not violate its "orders."  The Bankruptcy Court left JRH to seek

sanctions in other courts, but it is not clear that the Bankruptcy Court concluded that such courts

could award sanctions.

In response to the clear language of the Bankruptcy Court's decision, JRH argues in its

reply brief that the Bankruptcy Could not have decided not to sanction Adell as a matter of

discretion because the Bankruptcy Court did not conduct an evidentiary hearing and it did not

rely on an evidentiary record in reaching its decision.  However, the Sixth Circuit has held that

an evidentiary hearing is not always mandated before a decision regarding the imposition of

sanctions.  <u>See</u> <u>In re Big Rapids Mall Associates</u>, 98 F.3d 926, 929 (6th Cir. 1996) (finding that a

"hearing is not necessarily required where the court has full knowledge of the facts and is

familiar with the conduct of attorneys."); <u>INVST Financial Group, Inc. v. Chem-Nuclear</u>

<u>Systems, Inc.</u>, 815 F.2d 391, 405 (6th Cir. 1987 ) (holding that due process will depend on the

severity of the situation and of the sanction and citing with approval <u>Rodgers v. Lincoln Towing</u>

<u>Service, Inc.</u>, 771 F.2d 194, 205-06 (7th Cir. 1985) (finding hearing not necessary where district

court participated in proceedings and sanctions were based on court's observation of counsel's

conduct)); <u>In re MRL Residential Leasing, Inc.</u>, 121 F.3d 709 (table), 1997 WL 453163, *5 (6th

Cir. 1997).  <u>See</u> <u>also</u> <u>In re Kunstler</u>, 914 F.2d 505, 521 (4th Cir. 1990).  Because the Bankruptcy

Court decided as a matter of discretion not to sanction Adell, JRH's arguments on appeal are

unpersuasive. Therefore, those arguments should be rejected and the Bankruptcy Court's decision affirmed.[7]

JRH does not argue on appeal that the Bankruptcy Court abused its discretion and that issue is waived. See Mraovic v. Elgin, Joliet & Eastern Ry. Co., 897 F.2d 268, 272 (7th Cir.1990); In Re McCauley, 105 B.R. 315, 320-21 (E.D.Va. 1989); In Re Pine Mountain, Ltd., 80 B.R. 171, 173 (B.A.P. 9th Cir. 1987).

**2. Bankruptcy Court's Authority to Sanction Adell**

As discussed above, the Bankruptcy Court's opinion should be affirmed because the Bankruptcy Court declined to sanction Adell as a matter of discretion rather than determining, as argued by JRH, that it lacked the authority to sanction Adell for any post-award conduct. If, however, the District Court accepts JRH's argument and the Bankruptcy Court is viewed as having determined that it did not have the authority to sanction Adell, then the District Court should affirm the Bankruptcy Court's decision with respect to Adell's appeals of the initial award while reversing and remanding the Bankruptcy Court's opinion with respect to Adell's actions in other courts.

**a. Adell's Actions in Other Courts**

As discussed above, JRH moved for punitive sanctions pursuant to the inherent power of the Bankruptcy Court or 11 U.S.C § 105 of the Bankruptcy Code.

---

[7]While the Bankruptcy Court decided in its discretion not to sanction Adell for appealing the initial award and JRH does not challenge that decision, this Court finds for the reasons discussed below that the Bankruptcy Court lacked authority to sanction Adell for appealing the initial award. However, any error made by the Bankruptcy Court on that issue is harmless as the Bankruptcy Court found that no sanctions were warranted.

With respect to the inherent power of courts, the United States Supreme Court in Chambers v. NASCO, Inc., it "has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991) quoting United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812). "For this reason, 'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" Chambers, 501 U.S. at 43, quoting Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Chambers, 501 U.S. at 43, quoting Link v. Wabash R. Co., 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962). The Sixth Circuit has also confirmed the bankruptcy court's broad inherent powers to address improper conduct. See Mapother & Mapother, P.S.C. v. Cooper ( In re Downs), 103 F.3d 472, 477 (6th Cir. 1996) ("Bankruptcy courts, like Article III courts enjoy inherent power to sanction parties for improper conduct.").

In Chambers, the Supreme Court rejected a *per se* rule barring a court from sanctioning parties for conduct occurring outside the courtroom. The inherent power of courts "reaches both conduct before the court and that beyond the court's confines, for '[t]he underlying concern that gave rise to the contempt power was not ... merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience

interfered with the conduct of trial.'" Chambers, 501 U.S. at 44, quoting Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 798, 107 S.Ct. 2124, 2132, 95 L.Ed.2d 740 (1987) (citations omitted). "As long as a party receives an appropriate hearing, the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." Chambers, 501 U.S. at 57. See also Conner v. Travis County, 209 F.3d 794, 799 (5th Cir. 2000); Western Systems, Inc. v. Ulloa, 958 F.2d 864, 873 (9th Cir. 1992). Given the holding of Chambers, the Bankruptcy Court possessed authority, under its inherent powers, to sanction Adell for actions that occurred in other courts.[8]

JRH also moves for punitive sanctions pursuant to 11 U.S.C. § 105(a). That statute provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process. [11 U.S.C. § 105(a).]

The Supreme Court has repeatedly held that the Bankruptcy Code should be interpreted in accordance with its plain language. See, e.g., Taylor v. Freeland & Kronz, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); United States v. Ron Pair Enter., Inc., 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In Ron Pair, the Court stated: "The plain meaning of

---

[8]Adell does argue that he cannot be sanctioned because he did not violate any orders of the Bankruptcy Court. Regardless of whether Adell violated any court orders, disobeying court orders is only used as an example of sanctionable conduct in Chambers and a court's inherent authority to sanction parties is not limited to such circumstances. Chambers, 501 U.S. at 57.

legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" 489 U.S. at 242, 109 S.Ct. 1026 (interpreting the meaning of § 506 of the Bankruptcy Code) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). The Code is the result of congressional compromises concerning the competing interests in bankruptcy cases, Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 61 n. 12, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In light of those compromises, it is even more important to rely on the Code's plain language, rather than on outside evidence of congressional intent. Ron Pair, 489 U.S. at 240, 109 S.Ct. 1026; Board of Governors v. Dimension Fin. Corp., 474 U.S. 361, 373-74, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) ("Application of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action.") Thus, "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." Ron Pair, 489 U.S. at 240-41, 109 S.Ct. 1026; see also In re M & L Bus. Mach. Co., 75 F.3d 586, 590 (10th Cir.1996) (relying on the Ron Pair analysis in interpreting § 546 of the Bankruptcy Code according to its plain language).

Section 105 provides that a bankruptcy court may issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code and that the plain language of that statute appears to allow a bankruptcy court to sanction a party for that party's conduct in other courts. Adell offers no reason why the literal application of § 105 would produce a result demonstrably at odds with the intentions of its drafters. Courts have found that § 105 permits a

bankruptcy court to issue orders with respect to actions in other courts, <u>In re Canter</u>, 299 F.3d 1150, 1155 (9th Cir. 2002) (finding that § 105 contemplates injunctive relief where parties are pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate), and that § 105 permits punitive orders, <u>Jove Engineering, Inc. v. I.R.S.</u>, 92 F.3d 1539, 1554 (11th Cir. 1996) ("the plain meaning of § 105(a) encompasses any type of order, whether injunctive, compensative or punitive, as long as it is 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code.").

A bankruptcy court's power under § 105 is not unlimited and must be exercised within the confines of the Bankruptcy Code and other federal statutes. The exercise of its power must as well be necessary or appropriate to carry out the provisions of the Bankruptcy Code. <u>See</u> <u>Rice v. United States</u>, 78 F.3d 1144, 1151 (6th Cir. 1996). The plain meaning of § 105(a) allows a bankruptcy court to issue punitive sanctions for conduct that occurred outside of that bankruptcy court.

Adell makes several arguments with respect to the Bankruptcy Court's power to sanction pursuant to its inherent powers or § 105. First, Adell argues that the party sanctioned in <u>Chambers</u> had acted in direct contravention of court orders while Adell never violated the terms of the judgment in this case. Adell also argues that this case is similar to <u>In re Matter of Case</u>, 937 F.2d 1014 (5th Cir. 1991), in which the Fifth Circuit found that a bankruptcy court had erred in sanctioning a party for actions in state court proceedings because the state court proceedings were completely collateral to the proceedings in the bankruptcy court and the party's conduct in those proceedings did not affect the exercise of the judicial authority of the bankruptcy court or

limit the bankruptcy court's power to control the behavior of parties and attorneys in the litigation before it. <u>Matter of Case</u>, 937 F.2d at 1023-24. Adell further argues that this case is similar to <u>Conner v. Travis</u>, in which the Fifth Circuit found that bankruptcy court erred in sanctioning a party where the sanctions directly arose from the litigation before the court, but the actions taken in the other forum were not in direct contravention of the District Court's orders. <u>Conner</u>, 209 F.3d at 799-800. Lastly, Adell argues that § 105 does not transform a bankruptcy court into a roving authority to enter equitable remedies.

Regardless of the validity of Adell's arguments on appeal, they only go to why the Bankruptcy Court should not have issued sanctions under the circumstances of this case and that issue is not part of the appeal before the Court. There are limitations on when a court should issue punitive sanctions and Adell may be correct when asserting that the good reasons exist for denying sanctions in this case, but those arguments are irrelevant to whether the Bankruptcy Court could sanction Adell for conduct occurring in other courts. Pursuant to <u>Chambers</u> and the plain language of § 105, the Bankruptcy Court had such authority and, to the extent the Bankruptcy Court ruled otherwise, its decision should be reversed.

### 2. Adell's Appeal of the Judgment

While the Bankruptcy Court possessed the authority to sanction Adell for his conduct in other courts, that authority does not extent to sanctioning Adell for appealing the judgment entered by the Bankruptcy Court.

JRH points to <u>Chambers</u>, 501 U.S. at 57, and <u>Western Systems, Inc. v. Ulloa</u>. 958 F.2d 864, 873 (9th Cir. 1992) as examples of courts allowing sanctions by lower court against a party

because that party appealed the lower court's decision.  However, neither the Supreme Court and the Ninth Circuit expressly ruled on this issue in those cases.

Post-Chambers, a number of circuit courts have found that lower courts cannot generally sanction parties for appeals  See Conner, 209 F.3d at 800 (finding that both precedent and policies underlying a court's ability to sanction lead to the conclusion that a district court could not sanction a party for appeals); In re Villa West Associates, 146 F.3d 798, 808 (10th Cir. 1998) ("[T]he determination of the right to sanctions ... for conduct during an appeal is reserved to the appellate court, although it may allow the trial court to fix the amount of the fees and costs."); Schoenberg v. Shapolsky Publishers, Inc., 971 F.2d 926, 935 (2d Cir. 1992) overruled on other grounds by Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 349 (2d Cir. 2000) ("In any event, it is improper for a district court to impose sanctions for appeals taken to this Court.").

While the Sixth Circuit has not ruled on this issue, this Court believes that the better view is that a bankruptcy court cannot sanction a party for taking an appeal of the bankruptcy court's decision.  Adell had a right to appeal the Bankruptcy Court's ruling and both the District Court and the Sixth Circuit are in a better position to address the propriety of sanctioning Adell for his appeals.  As noted by the Fifth Circuit, the appellate court is generally better qualified to determine whether an appeal is sanctionable.  Conner, 209 F.3d at 801.  See also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 406-07, 110 S.Ct. 2447, 2461-62, 110 L.Ed.2d 359 (1990) (citing Fed. R. App. P. 38 and the sanctions it allows in support of the Court's reading that Fed. R. Civ. P. 11 only allows sanctions for "expenses ... at the trial level" and not for the costs of defending an appeal).  Moreover, the Sixth Circuit has noted that the decision to impose

appellate sanctions is a difficult one and that there is a danger that sanctions can chill appeals. <u>B & H Medical, L.L.C. v. ABP Admin., Inc.</u>, 526 F.3d 257, 271 (6th Cir. 2008). In light of the policy and practical reasons limiting the authority to sanction a party for appeals to appellate courts, the Bankruptcy Court's decision, to the extent it made such a decision, that it lacked the authority to sanction Adell for appealing the judgment should be affirmed.

## V.  Conclusion

As discussed above, this Court is of the opinion that the Bankruptcy Court's opinion should be affirmed.   The Bankruptcy Court declined to sanction Adell as a matter of discretion and JRH does not argue that the Bankruptcy's Court's decision was an abuse of discretion. Instead, JRH misconstrues the Bankruptcy Court's decision by asserting that the Bankruptcy Court found that it did not have the authority to sanction Adell.  Because the Bankruptcy Court did not make such a finding , JRH's appeal should be rejected.

If the District Court accepts JRH's interpretation of the Bankruptcy Court's decision, the District Court should still affirm the Bankruptcy Court's decision with respect to Adell's appeals of the initial award, but reverse and remand the Bankruptcy Court's decision with respect to Adell's actions in other courts.  In the better view, while the Bankruptcy Court lacked the authority to sanction Adell for appealing the initial award, it could sanction Adell for his actions in other courts pursuant to its inherent powers or 11 U.S.C. § 105.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.


s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge


Dated: November 19, 2008

---

## PROOF OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on November 19, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan